**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**(Filed Electronically)**

**CRIMINAL ACTION NO. 3:20-CR-94-DJH**
**UNITED STATES OF AMERICA,**                                                                       **PLAINTIFF,**

vs.

**MANUEL SALAZAR-LEIJA JR.,**                                                                       **DEFENDANT.**

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes the Defendant, Manuel Salazar-Leija ("Defendant" or, in the alternative, "Mr. Salazar-Leija"), by counsel, and respectfully requests this Honorable Court to consider the following factors and sentence Mr. Salazar-Leija to a sentence of probation with a condition of home detention. In support, the Defendant states as follows:

### I. INTRODUCTION

The Defendant entered a plea of guilty to three sole count contained within the indictment; Aiming a Laser Pointer at an Aircraft. DN 8. The guilty plea was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) on January 25, 2021. DN 20. Mr. Salazar-Leija is scheduled to be sentenced on May 13, 2021.

### II. PRE-SENTENCE REPORT

**Objections**

Mr. Salazar-Leija does not have any objections to the Final Pre-Sentence Report. DN 25.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

1

### III. STATUTORY SENTENCING RANGE

Mr. Salazar-Leija is charged in a one count Indictment. The sole count of the Indictment carries a penalty of not more than five years imprisonment; a fine of not more than $250,000; and not more than one year on supervised release. There is not a mandatory minimum sentence applicable to Mr. Salazar-Leija.

### IV. ADVISORY GUIDELINE RANGE

The Pre-Sentencing Report provides an Adjusted Offense Level of 12, which would be reduced to 10 for Mr. Salazar-Leija's acceptance of responsibility. *See,* PSR at ¶¶25 and 52. Mr. Salazar-Leija falls within Criminal History Category I. *Id.* at ¶¶31 and 52. A Final Offense Level 10 and Criminal History Category I results in an advisory Guideline range of 6 to 12 months. *Id.* at ¶84.

### V. SENTENCING LAW

The advisory sentencing guideline range is but one factor for the Court to consider when fashioning an appropriate sentence. Specifically, the Court must consider the advisory guidelines *as well as other factors* in arriving at a "reasonable" sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing imposed by 18 U.S.C. §3553(a)(2). Specifically, 18 § U.S.C. 3553(a) requires:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

2

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH AVENUE
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

Another statute that also impacts sentencing in the case at hand is 18 U.S.C. §3661. It requires that "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The district court must give consideration to the guidelines in determining a sufficient sentence, but it may not presume that the guideline sentence is the correct one. *Gall v. United States,* 552 U.S. 38, 46 (2007) and *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007). In fact, the Court is free to consider whether the advisory guideline sentence itself "fails properly to reflect §3553(a) considerations" in this case, and/or whether the advisory guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role."*Rita, supra* at 2465 and *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007).

### VI. ARGUMENT

A Total Offense level of 10 and a criminal history category of I produces a guideline range of 6-12 months, which is in the Zone B portion of the sentencing table. Sentences which fall within Zone B of the guidelines are eligible to be satisfied with "a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment..." USSG §5C1.1(c).

On September 25, 2020, Mr. Salazar-Leija had returned to his home after participating in

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

a march in downtown Louisville. The march was one of a series of events which had been occurring throughout Louisville after the death of Breonna Taylor. Mr. Salazer-Leija, like many other members of the Louisville community had come together to peaceful march to show solidarity with their African-American neighbors, to raise awareness about issues regarding racial discrimination, and to publically demand public policy changes to remedy discriminatory practices in their community. He had participated in other marches throughout the summer and fall of 2020.

Mr. Salazar-Leija, like many other Americans, felt that he had an obligation to his fellow citizens - to help to amplify their concerns, to stand in solidarity with members of his community, and to seek redress from his public officials - in order to shed light on the struggles of Black citizens in Louisville. The marches that he participated in were peaceful. The participants included a diverse cross-section of the community; young and old; Black and white; those who had suffered at the hands of discrimination, and those who sought an understanding of how to support their neighbors in their moment of need. Participants sang songs and engaged in chants demanding justice. The marchers carried banners with slogans like "No Justice No Peace", used bullhorns to amplify their voices, and some also had lights and lasers.

Louisville was not the only city in the United States experiencing the type of demonstrations described above. Citizens in cities across the nation were marching in similar gatherings. Oftentimes those gatherings were recorded and shared on social media websites, such as Facebook, Twitter, and SnapChat. In some of those videos, Mr. Salazar-Leija saw demonstrators carrying and using laser pointers with attachments on them to shine scattered beams of light onto buildings, roads, and sidewalks. He liked the visual effect created by the laser pointer and decided to purchase one for himself to be used while marching.

On the night of his arrest, he had participated in a march, and then returned home. Alone

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

5

in his room, he heard a helicopter overhead of his third-floor apartment. Aided by both adrenalin from the march, and dulled by having smoked a small amount of marijuana, he wondered if his laser pointer could reach the helicopter. He changed the cap of the laser pointer from the scattered effect he had always used in the marches, to a single beam, and in a moment that ultimately changed his life forever, he pointed it at the police helicopter.

In short order, Federal Bureau of Investigation (FBI) agents arrived at this apartment and began questioning him about the laser. He quickly admitted his having pointed it at the helicopter, and when informed of the dangerous situation that was averted - he offered his heartfelt apology, as well as a comment regarding him being glad that no one was seriously injured based on his reckless action.

That singular action will follow him in perpetuity. He is now branded a convicted felon. For some, that classification, while inconvenient, carries with it minimum negative consequences, but for Mr. Salazar-Leija, it has real impact. Its consequences matter - barred from voting, from sitting on a jury, from obtaining certain employment opportunities, and receiving certain types of government assistance - all of which matter to him. Mr. Salazar-Leija, recognizes the mistake that he make, is remorseful for his actions, and seeks to remedy it by addressing some of the issues in his life that caused him to engage in the underlying behavior involved in this case. Mr. Salazar-Leija has acknowledged to probation and pre-trial officers some untreated trauma that he has had in his life, as well as substance abuse in order to self-medicate the pain associated with those events. He sought, and is receiving, therapy to help heal those wounds, without having to engage in substance use. He is finding therapy to be very helpful and wishes to continue that process, even after the conclusion of this pending case.

Mr. Salazar-Leija is the ideal candidate for probation, with the condition of home detention.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

6

He has been on pre-trial release during the pendency of this case and has no violation of any of the conditions imposed upon him. He has shown that he understands the seriousness of this case, and has demonstrated such by his behavior while on release. His criminal history score of zero, placing him in the a criminal history category of I, also demonstrates that the behavior associated with this conviction is an aberration, as opposed to a pattern of criminal activity. He is not in need of treatment that could best be provided in an institutional setting, but rather is a productive member of his community, which is demonstrated by both his employment, as well as his participation in volunteer work at a local homeless shelter.

Tumultuous times sometimes do not bring out the best in a person. While seeking to participate in a commendable activity, Mr. Salazar-Leija went a step too far. It was not his intention to create a potentially harmful situation for those in the police helicopter, but he quickly realized that while that was not his intention, he had in fact created a dangerous situation for those flying the helicopter. Probation, with home detention as a condition, is sufficient, but not greater than what is necessary, to convey to Mr. Salazer-Leija the dangerous situation he created, and protect the community from a similar situation happening in the future.

### VII. CONCLUSION

In sum, when the factors the Court must consider under 18 U.S.C. §3553 (a) are applied here, a probated sentence, with home detention, is appropriate and reasonable. WHEREFORE, Mr. Salazar-Leija requests this Honorable Court to give him a probated sentence, with home detention.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

7

Respectfully submitted,

/s Aaron M. Dyke
Assistant Federal Defender
629 S. Fourth Street
Suite 200
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant

## CERTIFICATE

This is to certify that a true copy of the foregoing motion was served on the United States by electronically filing same to Mr. David Weiser, Esq., Assistant United States Attorney, this 3rd day of May, 2021.

s/ Aaron M. Dyke

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

8